UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

JAMILA RAJABI[1]                         CIVIL ACTION NO. 26-0922

                                         SECTION P

VS.

                                         JUDGE ALEXANDER C. VAN
                                         HOOK

PAMELA BONDI, ET AL.                     MAG. JUDGE CAROL B.
                                         WHITEHURST

## REPORT AND RECOMMENDATION

Petitioner Jamila Rajabi,[1] a detainee in the custody of the Department of

Homeland Security ("DHS") and the Bureau of Immigration and Customs

Enforcement ("ICE") proceeding pro se, petitions the Court for a writ of habeas

corpus under 28 U.S.C. § 2241.[2]  Respondents oppose the petition.  [doc. # 14].  For

reasons below, the Court should grant Petitioner's request for release from custody.

## Background

---

[1] Petitioner's "A-Number" is 221-389-683.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Petitioner is a citizen of Afghanistan.  [doc. # 1-2, p. 3].  She entered the United States of America on January 1, 2025.  *Id.*  She was taken into immigration custody the same day.  [doc. # 1, p. 4].  On September 25, 2025, an immigration judge ordered Petitioner removed from the United States but granted her withholding of removal to Afghanistan.  [doc. #s 1, p. 4; 1-2, p. 4; 14-2, pp. 2-4].  Petitioner and the Government waived appeal.

Petitioner filed this proceeding on March 20, 2026.  [doc. # 1, p. 8].  Citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), she claims that she has been detained for a prolonged period and that ICE is not likely to remove her in the near future.  *Id.* at 6.  She "has cooperated fully with all of ICE's efforts to remove" her, including providing her passport and biographical information.  [doc. #s 1-2, p. 3; 17, p. 1].  She states that "there is no third country alternative to which [she] can be removed without being subject to torture."  *Id.* at 4.  She also states that DHS has not identified any removal destination for her.  [doc. # 17, p. 2].

Respondents opposed the petition on May 29, 2026.  [doc. # 14].  Petitioner filed a reply on June 8, 2026.  [doc. # 17].

### Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  Under Section

2

1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3]  If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period. To date, she has been detained 260 days (or 8 months, 18 days) following her final order of removal. In addition, she meets her initial burden of providing good reason to believe that there is no significant likelihood of her removal in the reasonably foreseeable future.

For more than eight months, the Government has been unable to remove her. In addition, she "has cooperated fully with all of ICE's efforts to remove" her, including providing her passport and biographical information. [doc. #s 1-2, p. 3; 17, p. 1]. She states that "there is no third country alternative to which [she] can be removed without being subject to torture." *Id.* at 4. She also states that DHS has not identified any removal destination for her. [doc. # 17, p. 2].

Respondents fail to rebut Petitioner's arguments. Respondents do not provide any evidence indicating that, for instance, travel documents are forthcoming or that ICE will make meaningful progress in effectuating Petitioner's removal.

Respondents attach the declaration of Supervisory Detention and Deportation

Officer  Wilton J. Tyler, who declares in pertinent part:

> 6) On or about September 25, 2025, an Immigration Judge granted the petitioner withholding of removal. Both parties waived appeal.
>
> 7) On or about October 17, 2025, ERO received Petitioner's passport.
>
> 8) On or about October 24, 2025, a third country sworn statement was sent to the facility for service on the petitioner.
>
> 9) On or about April 15, 2026, a third country interview form was sent out for service on the petitioner. An e-mail was sent to the Detention and Deportation Officer (DDO) for guidance on third country removal.
>
> 10) On or about April 16, 2026, the petitioner refused to fill out the third country interview form.
>
> 11) On or about April 17, 2026, ERO contacted the State Department to request assistance with a third country removal. The state department responded that they would forward their request to the appropriate state decision makers.
>
> 12) On or about May 19, 2026, the petitioner was scheduled for a third country removal to Central African Republic on May 26, 2026. The case was reviewed by a Supervisory Detention and Deportation Officer (SDDO) and the A-file was sent to travel unit for third country removal to Central African Republic.
>
> 13) On or about May 27, 2026, ERO noted that the charter flight was cancelled. Third country removal has been postponed because of health issues in the region.
>
> 14) Petitioner has not been removed as of the time of this declaration, May 27, 2026.

[doc. # 14-1].

That ICE (i) requested guidance, (ii) requested assistance, (iii) sent Petitioner a form of unidentified import, and (iv) placed Petitioner on a cancelled charter flight does not establish that removal is significantly likely to occur in the reasonably foreseeable future. Likewise, that Respondents have not obtained a travel document for another country following the actions above suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future. Attempting to remove Petitioner via flight does indicate some progress, but the effort was ultimately unsuccessful. And Respondents do not provide any evidence, for example, that the "health issues in the region" to which they tried to remove Petitioner have abated. In over eight months and counting, Respondents have not been able to remove Petitioner and, at this point, they provide no evidence that progress will occur in the reasonably foreseeable future. "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701.

Respondents have not even identified another third country for Petitioner's removal, much less made any efforts at securing a travel document for a specific country. From the record, it appears that they have not even started the process of attempting to remove Petitioner to a country other than Central African Republic (where the Government is unable to remove Petitioner and others). And they do not state how long the process will take after identifying a specific country. Yet, they

still detain her. While not dispositive, the undersigned finds it persuasive that the

Government has detained Petitioner for approximately 1.5 years in total.

Respondents provide no evidence—or reasons to conclude—that a travel

document is forthcoming for another country.[4] They do not, for example, provide

any evidence that they have made progress in obtaining travel documents, that they

have been communicating with any country about Petitioner's deportation (aside

from the country discussed above), that any country has recently accepted others

---

[4] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

similarly situated to Petitioner, that any country has an agreement or treaty with the United States affecting Petitioner's removal, or that any other country is willing to accept Petitioner.[5, 6]

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal

---

[5] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

[6] *See generally Heagan v. Jolicoeur*, 2006 WL 897709, at *3 (W.D. Tex. Mar. 31, 2006) ("Other than providing evidence that they are working with the governments of Liberia and Ghana to establish Petitioner's identity, Respondents have not presented evidence regarding the time period that they will need to establish Petitioner's identity. Nor have the Respondents, using their significant expertise, established any time period in which they believe they will be able to effectuate Petitioner's removal . . . . Respondents have not provided the Court with, nor does the Court envision, a way to determine whether the Liberian, Nigerian or Ghanian governments will issue the necessary travel documents to effect Petitioner's removal in the reasonably foreseeable future."); *Shengelia v. Ortega*, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025) ("The Government has undertaken third-country inquiries for months now and has produced no acceptances, travel documents, timelines, or scheduled removal. While it has received refusals from France and Uganda, inquiries to Canada, Armenia, Azerbaijan, and Turkey remain pending without response. . . . Even when ICE has 'identified a third country,' noncitizens like Petitioner 'would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings.'") (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025)).

8

is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008).

Respondents even suggest that obtaining travel documents is beyond their control. They state specifically that the "processes for obtaining a temporary travel document from another country are complex, multi-faceted, and include considerations of diplomacy that are beyond the control of ICE." [doc. # 14, p. 8]. As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019). Petitioner need not show that removal is impossible. *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Finally, Respondents mention that "Petitioner refused to fill out the third country interview form[,]" but they do not contend that Petitioner's refusal condemns her *Zadvydas* claim. And even if they did, they do not explain what the document is or the import of Petitioner's refusal to sign it. Of note, in *Balogun v. I.N.S.*, 9 F.3d 347, 351 (5th Cir. 1993), the Fifth Circuit held "that if it is shown that petitioner by his conduct has intentionally prevented the INS from effecting his deportation, the six-month period should be equitably tolled until petitioner begins

to cooperate with the INS in effecting his deportation or his obstruction no longer prevents the INS from bringing that about." Here, however, Respondents do not contend that Petitioner's refusal to sign the document prevented ICE from effecting her deportation.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[7]

## **Conclusion**

For the reasons above, **IT IS RECOMMENDED** that Petitioner Jamila Rajabi's petition for habeas corpus be **GRANTED**: Respondents, and the Warden of Richwood Correctional Center, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision if necessary and (B) if Petitioner has family and/or an emergency contact on record, notify them of the exact location and time of her release no less than two hours before her release.

**IT IS FURTHER RECOMMENDED** that any possible or anticipated removal or transfer of Petitioner under this present detention be **PROHIBITED**.[8]

---

[7] The undersigned finds no need to address any claim or request for relief not addressed herein.

[8] In other words, it is the intent of the Court that Petitioner shall not be released only to be immediately taken back into custody. The Court expresses no opinion as to whether Petitioner could or should be taken into custody at a later date if travel documents were to be obtained.

Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming her release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Lafayette, Louisiana, this 12th  day of June, 2026.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

11